**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KEVIN WASHINGTON, individually and on behalf of all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br><br>FORM ENERGY, INC.,<br><br>Defendant. | Case No. 1:25-cv-13303 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
<u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>**

Pursuant to <u>Federal Rules of Civil Procedure 12(b)(1)</u> and 12(b)(6), Defendant Form Energy, Inc. ("Form Energy") respectfully moves the Court to dismiss Plaintiff's Class Action Complaint ("Complaint") because Plaintiff lacks standing to bring this action and the claims therein fail to state a claim against Form Energy.

## **INTRODUCTION**

In September 2025, Form Energy became another victim of a criminal ransomware attack (the "Incident"). Form Energy responded quickly to the Incident, and, in an abundance of caution, quickly notified individuals whose personal information *may* have been impacted by the Incident. Based on the mere receipt of that notice, this lawsuit was filed, alleging no actual injury; no fraud, no attempted fraud, and no actual financial loss.

The Complaint here is admittedly lengthy, but falls quite short on providing the necessary facts to support its causes of action. Plaintiff fails to provide one detail regarding any alleged harm suffered, let alone a concrete injury. Instead, the Complaint is replete with generic allegations regarding an "increased risk" of harm and other nonspecific statements unsupported by facts required to sustain his claims. Stripped of vague and conclusory allegations, the Complaint rests on nothing more than a speculative chain of theoretical possibilities of future harm. Courts in the First Circuit—and across the country—have repeatedly rejected this theory of standing, expressing increasing skepticism toward cases where, as here, plaintiffs allege no actual or imminent injury arising from a cyberattack. Because the Complaint fails to plausibly allege a concrete injury-in-fact, it must be dismissed for lack of standing.

Even if Plaintiff could satisfy Article III—which he cannot—the Complaint fails for the independent reason that it does not plead facts supporting the essential elements of any of his claims.

For each cause of action, Plaintiff offers only generalized assertions untethered to factual allegations about his own experience, which is insufficient under Rule 12(b)(6).

## **FACTUAL ALLEGATIONS**

On September 16, 2025, Form Energy fell victim to a criminal ransomware attack. In response, Form Energy immediately took affected systems offline, engaged external cybersecurity experts, launched an investigation, and began remediation activities. *See* Compl. ¶ 4 (citing October 22, 2025 Sample Notice of Data Breach ("Notice")). Through its ongoing investigation and forensic analysis, Form Energy came to learn that "one of the machines impacted . . . was storing historical employee personal information for team members working at [Form Energy] as of or prior to September 2023" and that information on the machine included "name[s], address[es], date[s] of birth, social security number[s], bank account number[s] and I-9 verification information." *Id*. Though Form Energy had *found no evidence* of any exfiltration of personal information nor misuse of personal information resulting from the Incident, it nonetheless notified potentially affected individuals only thirty-six (36) days after learning of the Incident. In addition, and importantly, Form Energy offered up to two years of complimentary identity protection and credit monitoring services for individuals whose data may have been at risk. *Id*.

Plaintiff alleges he is a former employee of Form Energy and that he provided Form Energy with unspecified personal information in the course of his employment. *Id*. at ¶¶ 24-25; 111-12. Plaintiff further alleges that Form Energy retained his personal information in its systems at the time of the Incident. *Id*. at ¶ 112.

Based on these allegations, Plaintiff asserts four causes of action: (1) negligence; (2) negligence *per se*; (3) breach of implied contract; and (4) unjust enrichment. *Id*. at ¶¶137-204.

## STANDARD OF REVIEW

Plaintiff bears the burden of establishing the elements for standing: (i) injury-in-fact, (ii) traceability of that injury to Form Energy, and (iii) a likelihood the injury would be redressed by a favorable decision. *Spokeo, Inc.*, *v. Robins,* 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). When reviewing a Rule 12(b)(1) motion, courts accept well-pleaded allegations as true, but even "at the pleading stage the plaintiff must clearly allege facts demonstrating each element" of standing. *Spokeo*, 578 U.S. at 338. And "plaintiffs must demonstrate standing for each claim and form of relief they allege (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594, U.S. 413, 431 (2021); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). Courts also "do not apply the same presumption of truth to statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory or to allegations so speculative that they fail to cross 'the line between the conclusory and the factual." *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014) (internal quotations and citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Reading the complaint "as a whole," the court "undertakes a context-specific, two-step inquiry." *Shea v. Am. Int'l Coll.*, No. 1:24-CV-114499-AK, 2025 WL 2577196, at *2 (D. Mass. Sept. 5, 2025) citing *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). "First, it separates factual allegations from conclusory legal statements, accepting the former as true and disregarding the latter." *Shea*, 2025 WL 2577196, at *2 (internal citations omitted). "Second, it determines whether the well-pleaded facts permit a reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted). Although "[t]he plausibility standard is not akin to a probability requirement," it requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678-79. A pleading that merely "tenders naked assertion[s] devoid of further factual enhancement is insufficient." *Id.* (where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]'—'that the pleader is entitled to relief'"); *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017) ("If the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,'" dismissal is appropriate.).

## ARGUMENT

The Complaint must be dismissed both for lack of standing and for failure to state a claim. Plaintiff does not plausibly allege an injury in fact that is fairly traceable to the Incident. Further, Plaintiff fails to sufficiently plead the other required elements of his claims.

## I.  PLAINTIFF LACKS STANDING.

Notwithstanding his verbose complaint, simply put, Plaintiff does not allege that he has experienced any concrete injuries: no instance of actual identity theft, no fraud, no attempted fraud, and no out-of-pocket loss as a result of the Incident. "Conjectural or hypothetical" is the only way to describe the injuries that Plaintiff alleges here. *Spokeo*, 578 U.S. at 229 (quoting *Lujan*, 504 U.S. at 560). The Complaint relies solely on generalized and conclusory assertions of injuries in the form of: (1) "increased risk to his Private Information"; (2) lost time and opportunity costs "associated with attempting to mitigate the actual consequences of the [Incident]"; (3) "lost or diminished value of Private Information"; and (4) "invasion of privacy"; and (5) "loss of the benefit of the bargain." Compl. ¶¶ 8, 80, 115, and 164. Plaintiff's allegations of an increase in spam

calls, texts, and emails (*id*. at ¶117) and that the Incident has "caused Plaintiff to suffer fear, anxiety, and stress" (*id*. at ¶116) are equally insufficient to establish standing.

### A.   Plaintiff's Conjecture about Possible Future Harm Is Insufficient to Establish Standing without Actual Misuse of Data.

In data breach litigation, the First Circuit requires allegations of actual data misuse traceable to the breach to constitute an actual injury in fact. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 375-76 (1st Cir. 2023); *see also Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 99 (D. Mass. 2023) ("Plaintiffs have not identified any First Circuit caselaw in which a court has found plaintiffs had established standing in a similar context, without allegations of actual misuse."); *Rivera-Marrero v. Banco Popular de Puerto Rico*, No. 22-cv-01217, 2023 WL 2744683, at *11 (D.P.R. Mar. 31, 2023) ("no court in this circuit has found standing in a case premised on an allegation of an increased risk of future injury due a data breach of PII where the plaintiff does not allege any actual misuse of their PII."). In addition, the First Circuit has repeatedly held that to pursue damages based on a risk of future harm, a plaintiff must "plausibly allege a separate concrete, present harm caused by the plaintiffs' exposure to this risk of future harm." *Taylor*, 693 F.Supp.3d at 90 (quoting *Webb*, 72 F.4th at 376) (internal quotations omitted).

Under this framework, courts have consistently dismissed data breach complaints where, like the one here, no actual misuse is pled. *See Rivera-Marrero*, 2023 WL 2744683, at *10-12 (no standing despite allegations that plaintiffs' Social Security numbers were disclosed); *see also Taylor*, 693 F.Supp.3d at 99 (finding that the claim of risk of future risk of identity theft, loss of privacy lost value of PII, and costs associated with mitigating future consequences was insufficient to confer standing); *Scifo v. Alvaria, Inc.*, No. 23-CV-10999-ADB, 2024 WL 4252694, at *3 (D. Mass. Sept. 20, 2024) ("[C]onclusory allegations and speculation regarding how [alleged] instances of misuse are traceable to the Data Breach ... are insufficient to carry their burden as to

demonstrating standing."). In contrast, where complaints provide allegations "beyond speculation" and describe specific instances of fraud and resultant harms (e.g. specific emotional distress symptoms and detailed mitigation expenses) standing is established. *Shea*, 2025 WL 2577196, at *3 ("Here, Shea's allegations go beyond speculation: she pleads a discrete fraudulent payment, describes specific emotional distress symptoms, and details mitigation expenses. These allegations satisfy the injury in fact requirement.")

Here, the Plaintiff failed to plead any details that take his claims of future harm beyond mere conjecture. As this court held in *Shea*, and is the case here, "a bare risk of future harm, without accompanying misuse or mitigation efforts" is insufficient. *Id.* This is consistent with decisions of courts around the country that are increasingly dismissing such barebones and conjectural complaints.[1] Plaintiff asserts that he is "at a present risk and will continue to be at increased risk of identity theft and fraud for years to come," (Compl. ¶ 119), but tellingly fails to plead any factual allegations demonstrating that he, or anyone else, experienced any actual identity theft or fraud or misuse. Based on the circumstances of the Incident, Plaintiff cannot plead such facts.

---

[1] *See e.g., Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476 (D.S.C. 2025)(dismissing data breach case where the plaintiffs did not allege any facts to support any actual misuse of their personally identifiable information ("PII"), such as a sale of their PII to third parties, identity theft, or unauthorized charges on their credit cards); *Manning v. Zumpano Patricios, P.A.*, No. 25-CV-23184, 2025 WL 3062563, at *8-9 (S.D. Fla. Nov. 3, 2025) (dismissing data breach case for lack of standing where the plaintiffs did not allege a substantial risk of future harm); *Pulliam. v. West Tech. Grp., LLC*, No. 23-159, 2024 WL 356777, at * 7 (D. Neb. Jan. 19, 2024) (observing in a data breach case involving access to Social Security numbers that "Plaintiffs' allegation of future injury is insufficient to confer standing because they have failed to plausibly allege that identity theft or fraud is certainly impending or [that] there is a substantial risk that the harm will occur."); *Jenkins v. Associated Wholesale Grocers, Inc.*, No. 24-4039-DDC-GEB, 2025 WL 708574, *15 (D. Kan. Mar. 5, 2025) (dismissing data breach case for lack of standing where the plaintiff did not allege actual misuse of his stolen PII that was fairly traceable to the data breach and had not shown that the risk of future identity theft and fraud was sufficiently imminent).

As the Complaint does not, and cannot, allege any fraud or misuse of information by any individual, but instead simply speculates about a potential risk of future harm, this Complaint must be dismissed. *Quintero v. Metro Santurce, Inc.*, No. 20-01075-WGY, 2021 WL 5855752, at *7 (D.P.R. Dec. 9, 2021) (finding that equating a hacker accessing and encrypting data with "acquisition and misuse—is a bridge too far, mere speculation, and is not in accord with the modern trend in this area of the law.").

**B.    Plaintiff's Allegations of Emotional Distress Also Fail to Establish Standing.**

Plaintiff's bare allegation that he has suffered "fear, anxiety, and stress" (Compl. ¶ 116), does not suffice to establish standing. The Complaint alleges no facts regarding the nature, severity, or duration of the purported emotional distress, and courts consistently have held that such conclusory assertions of emotional distress are insufficient. *See Rivera-Marrero*, 2023 WL 2744683, at *12 ("As to plaintiff's claims for damages based on present or 'actual' injuries— diminution in the value of her PII, lost time, annoyance, interference, inconvenience, anxiety, and increased concerns for the loss of her privacy—these suffer the same fate. All of these are premised on a speculative risk of harm that is too abstract to constitute an injury in fact."); *see, e.g., Scifo*, 2024 WL 4252694, at *5, n.9 (rejecting emotional distress theory of injury as threadbare and conclusory); *see also Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) ("We also reject the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient to confer Article III standing."). This rationale applies with even greater force here, where Plaintiff only makes conclusory allegations of emotional distress and there are no allegations of misuse of any information stemming from the Incident.

In contrast, in *Webb*, the First Circuit found that a plaintiff had plausibly alleged concrete injury "based on the material risk of future misuse . . . and a concrete harm caused by exposure to this risk." *Webb*, 72 F.4th at 377. The plaintiff there alleged "fears for her personal financial security . . . time and effort monitoring her accounts . . . [and] feelings of rage and anger, anxiety, sleep disruption, stress, fear, and physical pain." *Id*. at 370. Significantly, those conclusions all flowed from the fact that another plaintiff had made clear allegations of actual misuse in the form of a filing of a fraudulent tax return using the Social Security number exposed in the breach. But there are no such allegations here. Plaintiff's boilerplate allegations of emotional distress do not and cannot salvage his deficient Complaint.

### C.    Plaintiff's Unsubstantiated Claims of Unjustified Voluntary Mitigation Also Fail to Establish Standing.

As a general rule, mitigation efforts alone do not confer standing in a data breach incident. Instead, mitigation efforts must have been taken in response to "a substantial *and imminent risk* of harm" to constitute an injury in fact for standing purposes. *Webb*, 72 F.4th at 377 (emphasis added).

Here, the Complaint does not even try to provide details of the alleged mitigation efforts, simply alleging that "Plaintiff has taken 'efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach …. [and] has spent significant time dealing with the Data Breach – valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.'" Compl. ¶114. Such nonspecific allegations are insufficient to establish standing. Moreover, Form Energy's notice offered complimentary monitoring services and provided all information necessary to enroll, underscoring that any additional steps Plaintiff may have taken were voluntary and self-imposed. It is well settled that a plaintiff may not manufacture standing merely by inflicting harm on themselves based on a hypothetical risk of future harm. *Clapper*, 568 U.S. at 416; *see also*

*Hartigan v. Macy's, Inc.*, 501 F. Supp. 3d 1, 6 (D. Mass. 2020) ("[A]lthough a data breach occurred, [plaintiff] alleges no misuse of his or any class member's data. [Plaintiff's] purchase of credit monitoring services thus was not 'premised on a reasonably impending threat' and does not constitute injury-in-fact."). As such, these unspecific, barebones allegations do not establish an injury such that Plaintiff has standing to bring his claims.

### D.  Plaintiffs' Other Alleged Harms Are Nothing More than a Speculative List of Horribles and Do Not Confer Standing.

The remaining injuries asserted by Plaintiff – (1) increased spam; (2) "lost or diminished value of Private Information"; (3) "invasion of privacy"; and (4) "loss of the benefit of the bargain" – have repeatedly been held insufficient to establish standing.

First, an increase in spam texts does not constitute a concrete injury and is insufficient to confer standing. *See, e.g.*, *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 520 (Mass. 1991) (finding the receipt of unwanted telemarketing calls did not constitute an injury, "[t]he law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionable.") (quoting *Kelley v. Post Pub. Co.*, 327 Mass. 275, 278 (Mass. 1951); *see also Reidy v. Umass Memorial Medical Center, Inc.*, No. 2085-CV-01101, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021) (spam phone calls and mail were insufficient to establish cognizable injury because they were "speculative and conclusory and do not sufficiently allege an identifiable, actual harm."); *Scifo*, 2024 WL 4252694, at *4 (alleged increase in spam emails was not fairly traceable to the data breach and thus did not establish standing where emails were not part of data breach); *Cooper v. Bonobos, Inc.*, 21-cv-854, 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022) (dismissing data breach class action for lack of standing and noting that courts "have generally rejected the theory that unsolicited calls or emails constitute an injury in fact").

Second, Plaintiff's assertion that he has suffered loss or diminution of value in his personal information likewise is insufficient because Plaintiff does not allege that he has attempted to sell his personal information. As the court observed in *Taylor*, "[c]ourts have consistently 'rejected allegations that the diminution in value of personal information can support standing,' particularly where [as here] the plaintiffs 'have not alleged that they attempted to sell their personal information or that, if they have, the data breach forced them to accept a decreased price for that information.'" 2023 WL 8291834, at *7 (collecting cases).

Finally, the Complaint simply lists "invasion of privacy" and "loss of the benefit of the bargain" as injuries suffered without even feigning an interest in providing meaningful details about those claims. Compl. ¶ 115. Such allegations fail to establish standing because "no specific information is provided regarding the harm, if any, that has befallen each individual plaintiff." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 732 (1st Cir. 2016) ("scattered descriptions of generalized harms" and "state[ments] … that '[a]s a direct result' of [Defendant's conduct] 'Plaintiffs have sustained, or are at imminent risk of sustaining ... [a] list of horribles" are insufficient); *Perez-Kudzma v. United States*, 940 F.3d 142, 146 (1st Cir. 2019) (plaintiffs lacked standing as the complaint "sets forth only a diffuse description of the asserted injuries" and "omits any facts that explain how those injuries could be identified as resulting from" defendants' alleged conduct).

In sum, Plaintiff fails to demonstrate standing because there are no plausible allegations that he has suffered an injury in fact that is fairly traceable to the Incident. On this basis alone, the Complaint must be dismissed.[2]

---

[2] Plaintiff also lacks standing to seek injunctive relief against Form Energy. "Standing for injunctive relief depends on 'whether [the plaintiffs are] likely to suffer future injury.'" *Webb*, 72 F.4th at 378 (citations omitted). Here, Plaintiff is at no risk of future injury.

## II.    PLAINTIFF HAS FAILED TO PLEAD A COGNIZABLE CLAIM FOR RELIEF.

Even if Plaintiff could plausibly allege an injury sufficient to satisfy the threshold standing requirement, and he cannot, the Complaint still must be dismissed because it fails to plausibly allege all elements of each claim. We begin with a common flaw in the injury allegations of negligence and breach of contract claims and then address other deficiencies in each claim.

### A.    Plaintiff's Negligence and Breach of Implied Contract Claims Fail Because They Have Not Alleged Any Cognizable Injury.

An actual, cognizable, and present harm proximately caused by the Incident is an essential element of Plaintiff's negligence and breach of implied contract claims. *See Cannon v. Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978) ("A negligence action may not be maintained unless one has suffered injury or damage) (citing *Sullivan v. Old Colony St. Ry. Co.*, 200 Mass. 303, 307 (1908)); *Signarella v. City of Boston*, 342 Mass. 385, 387 (1961) (essential element of claim for breach of contract is that "the plaintiffs have suffered damage"). However, as discussed above Plaintiff has not adequately alleged such harm.[3]

As an initial matter, Massachusetts courts have rejected negligence claims based only on an increased risk of harm absent some allegation of actual injury. *See, e.g.*, *Reidy*, 2021 WL 6777622, at *2 (dismissing data breach class action premised on "speculative and conclusory" allegations "potential future harm" and receipt of spam calls); *Donovan v. Phillip Morris USA Inc.*, 455 Mass. 215, 222, 225-26 (Mass. 2009) (allowing a claim for medical monitoring damages (*i.e.*, for the increased risk of cancer) only where plaintiff could first plead an actual, present injury).

---

[3] Although there is factual overlap, "the standard for alleging actual damages is generally higher than that for plausibly alleging injury in fact" for standing. *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019); *see also Pruchnicki v. Envision Healthcare Corp.*, 845 Fed. App'x 613, 614 (9th Cir. 2021) (whether allegations "adequately alleged compensable damages is a different question" from whether they sufficiently alleged injury-in-fact for standing purposes) (citing *Doe v. Chao*, 540 U.S. 614, 624-25 (2004)).

This is consistent with caselaw from other circuits that a risk of future identity theft resulting from a data breach is insufficient to establish the injury element of either a negligence or an implied contract claim. *See, e.g., Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (finding that plaintiffs did not establish a cognizable injury for purposes of their negligence claim); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634-40 (7th Cir. 2007) (dismissing negligence and implied contract claims premised on "allegations of increased risk of future identity theft"); *Zeldman v. Pershing LLC*, No. 09-22609-CIV, 2010 WL 11505834, at *5 (S.D. Fla. Aug. 20, 2010) (dismissing claims, including negligence and implied contract, because plaintiff's "alleged harm boils down to the increased chance of an increased risk of identity theft").

Moreover, Plaintiff's conclusory allegation that he lost value in his personal information is insufficient to establish damages. As the Supreme Judicial Court of Massachusetts has held: "Negligence does not operate in a vacuum. Legal consequences result from it if, but only if, the negligence is causally related to the harm complained of." *Falvey v. Hamelburg*, 347 Mass. 430, 435 (1964); *Abrams v. Reynolds Metal Co.*, 340 Mass. 704, 708 (1960) (established principle for contract damages is that "the injured party shall be placed in the same position he would have been in if the contract had been performed, *so far as the loss may be ascertained to have followed as a natural consequence of the breach*") (emphasis added). Yet Plaintiff fails to allege any connection between the (unspecified) value of his personal information and any economic loss he allegedly suffered as a result of the Incident.

Further, as with standing, many other courts have rejected this diminution in value theory in the data breach context – holding that absent any factual allegation of his actual participation in the marketplace, a plaintiff's generic allegations of diminution in the value of personal information

is insufficient to satisfy the damages element of negligence and breach of contract claims. As the Ninth Circuit held in one such case:

> Pruchnicki submits that she adequately alleged diminution of the value of her personal information. We disagree. Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that *her* personal information actually lost value. Several courts in this Circuit have found, and we agree, that the 'mere misappropriation of personal information' does not establish compensable damages."

*Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021); *see also Gardiner v. Walmart*, No. 20-cv-04618-JSW, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) (plaintiff failed to plausibly allege the damages element of his negligence and breach of contract claims where he did not allege that he was "unable to sell, profit from, or monetize his personal information").

And as discussed above, Plaintiff's alleged anxiety, increased spam messages, and lost time do not satisfy the damages element of his negligence and breach of implied contract claims. *See infra* at I (C).

### A.    Plaintiff's Negligence Claim is Barred by the Economic Loss Doctrine.

Massachusetts courts have applied the economic loss doctrine to dismiss negligence claims in data breach litigation, where, as here, the alleged losses are solely speculative economic damages, and the plaintiff does not allege personal injury or property damage. *See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,* 918 N.E.2d 36, 47 (Mass. 2009); *In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 498-99 (1st Cir. 2009); *Eggiman v. Bank of America, N.A.*, No. 1:22-CV-10298-ADB, 2023 WL 2647071, at *4-5 (D. Mass. Mar. 27, 2023); *Zoll Medical Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106-07 (D. Mass. 2021).

Plaintiff alleges only speculative economic losses, including diminution in the value of his personal information and lost time. He does not allege physical harm or property damage. That the

Complaint includes similarly conclusory and generic allegations that Plaintiff suffered stress and anxiety does not render this rule inapplicable. *See Afridi v. Residential Credit Sols., Inc.*, 189 F. Supp. 3d 193, 199 (D. Mass. 2016) (plaintiffs' alleged "stress and anxiety due to the increased risk of losing property and costs and legal expenses" did not amount to personal injury under the economic loss doctrine, absent physical harm).

### B.    Negligence *Per Se* is Not an Independent Cause of Action.

The Complaint also alleges that Form Energy violated the FTC Act because it was a victim of a data breach and that alleged violation constitutes negligence *per se*; however, Massachusetts law does not recognize negligence *per se* as an independent cause of action. *See, e.g.*, *Eggiman*, 2023 WL 2647071, at *4-5 (citing *Juliano v. Simpson*, 461 Mass. 527, 532 (2012)); *see also Deutsche Lufthansa AG v. Mass. Port Authority*, No. 17-cv-11702-DJC, 2018 WL 3466938, at *2 (D. Mass. Jul. 18, 2018) ("The Supreme Judicial Court has repeatedly reaffirmed the principle that negligence *per se* does not exist as a cause of action independent from a general negligence action because violation of the statute can only be some evidence of the defendant's negligence."); *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 124–25 (D. Mass. 2024). Therefore, Plaintiff's claim for negligence *per se* must be dismissed.

### C.    Plaintiff Fails to Allege Breach of an Implied Contract.

In addition to failing to allege cognizable damages, Plaintiff's breach of implied contract claim fails because the Complaint does not allege a meeting of the minds for any contract for data security. Under Massachusetts law, "[c]ontract formation requires a bargain in which there is a manifestation of mutual assent to the exchange." *Vacca v. Brigham & Women's Hosp., Inc.*, 98 Mass. App. Ct. 463, 467 (Mass. App. Ct. 2020) (quoting *Sea Breeze Estates, LLC v. Jarema*, 94 Mass. App. Ct. 210, 215 (Mass. App. Ct. 2018)). "[I]t is essential to the existence of a contract that its nature and the extent of its obligations be certain." *Vacca*, 98 Mass. App. Ct. at 468 (quoting

*Caggiano v. Marchegiano*, 327 Mass. 574, 579 (Mass. 1951)). An implied contract requires the same meeting of the minds. *Woodward v. Emulex Corp.*, 854 F. Supp. 2d 149, 161 (D. Mass. 2012), *aff'd*, 714 F.3d 632 (1st Cir. 2013) ("A contract implied in fact comes into being when, notwithstanding the absence of a written or verbal agreement, the conduct or relations of the parties imply the existence of a contract."). Although Massachusetts law recognizes implied contracts formed by conduct or relationship, courts have rejected implied contract claims in data breach cases unless the plaintiff pleads sufficient facts to show that the data holder "agreed — explicitly or implicitly — to provide [data] protection." *Webb v. Injured Workers Pharmacy, LLC*, No. 22-CV-10797, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023)

Here, Plaintiff fails to plead an offer or acceptance of any contract to keep Plaintiff's information secure from cybercriminals. Plaintiff's breach of implied contract claim rests on the notion that an implied contract for data security existed based on his employment relationship with Form Energy. Yet Plaintiff does not allege one detail relating to such implied agreement. Compl. ¶¶ 177-192. This type of generic pleading is insufficient to allege the existence of an implied contract. *See, e.g., Rodriguez v. Mass. Bay Trans. Auth.*, 92 Mass. App. Ct. 26, 29 (Mass. App. Ct. 2017) (affirming dismissal of contract claim where "the complaint does not set forth the material terms of the claimed contract."); *Meunier v. Mkt. Strategies, Inc.*, 34 Mass. L. Rptr. 146, at *2 (Mass. Super. Ct. Feb. 24, 2017) (dismissing breach of contract claim premised on "the conclusory and incorrect assertion that [defendant] breached the covenant not to sue.").

Such pleading deficiencies have been routinely rejected by federal courts in data breach cases. *See, e.g., Longnecker-Wells v. Benecard Servs., Inc.*, 658 F. App'x 659, 662 (3d Cir. 2016) (affirming dismissal of breach of implied contract claim in data breach class action where employees failed to plead "any company-specific documents or policies from which one could

infer an implied contractual duty to protect Plaintiffs' information from hackers); *Krottner*, <u>406 F. App'x at 131</u> (affirming dismissal of implied contract claim in data breach case because the plaintiff did not allege facts showing "that they accepted a specific offer to encrypt and otherwise safeguard their personal data"); *In re Waste Mgmt. Data Breach Litig.*, Nos. 21cv6147 (DLC), -6199 (DLC), -6257 (DLC), -6902 (DLC), <u>2022 WL 561734</u>, at *5-6 (S.D.N.Y. Feb. 24, 2022) (dismissing implied contract claim where complaint did not allege that defendant "failed to reasonably safeguard employees' data"). "Indeed, the vast majority of commercial transactions today require the disclosure of PII"; that PII was provided as a condition of enrollment, employment, or service. is "insufficient to support an implied contract claim." *Weekes v. Cohen Cleary P.C.*, No. CV 23-10817-NMG, <u>2024 WL 1159642</u>, at *5 (D. Mass. Ma<u>r. 15</u>, <u>2024)</u>.

Moreover, even if a contract were to exist, Plaintiff cannot allege a material breach. The Notice upon which Plaintiff's claim rests states only that Plaintiff's personal information *may* have been affected in the Incident. Notice (emphasis added). Thus, there is no evidence of any actual disclosure of Plaintiff's personal information to any unauthorized party – and thus no breach of an obligation to protect that information.

### D.    Plaintiff Fails to State a Claim for Unjust Enrichment

As a threshold matter, "[a] claim for unjust enrichment . . . is 'not available to a party with an adequate remedy at law.'" *Fernandes v. Havkin*, <u>731 F. Supp. 2d 103, 114</u> (D. Mass. 2010) (internal quotations omitted). "It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis v. Nordstrom, Inc.*, <u>865 F.3d 1, 16</u> (1st Ci<u>r. 2017</u>). Thus, Plaintiff's claims for negligence and breach of contract preclude his unjust enrichment claim.

Moreover, Plaintiff cannot plausibly plead the elements of unjust enrichment. Recovery on an unjust enrichment claim requires: "(1) a benefit conferred upon the defendant by the plaintiff;

(2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (citation omitted). The benefit "must be unjust, a quality that turns on the reasonable expectations of the parties." *Id.* Typically, this means parties were dealing with each other in such a way that "reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant." *Id.* (citing *Hessleton v. BankNorth, N.A.*, No. 03347, 2004 WL 1588255, at *3 (Mass. Super. Ct. 2004)).

As to Plaintiff, the Complaint alleges, in conclusory fashion, that he "conferred a monetary benefit on Defendant … [by] perform[ing] labor …, and provid[ing] Defendant with [his] Private Information." Compl. ¶195. It further alleges, in conclusory fashion,  that Form Energy (i) "benefit[ed] [from this] by accepting and retaining the Private Information entrusted to it" and (ii) "profited from Plaintiff's retained data and … used Plaintiff's … Private Information for business purposes."  *Id.* at ¶196. It goes on to assert that "[i]f Plaintiff … had known that Defendant would not use adequate security practices ... [he] would not have entrusted [his] Private Information to Defendant. *Id.* at ¶ 199. These allegations fail to substantiate an unjust enrichment claim. Plaintiff received full payment in exchange for his labor. Indeed, if anyone benefits from a data incident, it is the criminals who take or sell information – certainly not the defendants who are the victims of crime. *See, e.g.*, *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (dismissing plaintiffs' unjust enrichment claims); *Kingen v. Warner Nortcross + Judd LLP*, No. 1:22-cv-01126, 2023 WL 8544231, at *5 (W.D. Mich. Oct. 4, 2023).

Plaintiff's allegations that it conferred a monetary benefit on his employer by providing it with his personal information and that the company has "profited from Plaintiff's retained data"

likewise fail. Compl. ¶ 196. Courts have "routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *In re Arthur J. Gallagher Data Breach Litig.*, <u>631 F. Supp. 3d at 591</u>; *Fero v. Excellus Health Plan, Inc.*, <u>236 F. Supp. 3d 735, 755</u> (W.D.N.Y. 2017). This is particularly so in the employment context, where the information is used to confirm eligibility for employment and to compensate the employee.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Complaint must be dismissed in its entirety.


Dated:                                              Respectfully submitted,

                                                    **BAKER & HOSTETLER LLP**

                                                    By: *<u>/s/ Emily Baxter</u>*
                                                    *Attorney for Defendant*

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATION</u>

I certify that counsel for Defendant Form Energy, Inc. conferred with counsel for Plaintiff's in a good faith effort to resolve or narrow the issues raised by this Motion, and Plaintiff's oppose the relief sought by the Motion.

Dated: January 26, 2026                                    */s/ Emily Baxter*

## **CERTIFICATE OF SERVICE**

I certify that on this day, I served a copy of the foregoing Motion to Dismiss Plaintiff's Class Action Complaint, filed through the ECF system, electronically to counsel of record.

Dated: January 26, 2026                    */s/ Emily Baxter*